UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60886-RAR

**PAUL SINCLAIR**, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

**WIRELESS ADVOCATES, LLC**,

    Defendant.
_____/

## ORDER DENYING MOTION TO COMPEL ARBITRATION AND SETTING CASE MANAGEMENT CONFERENCE

**THIS CAUSE** comes before the Court upon Defendant's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration [ECF No. 22] ("Motion"). The Court has reviewed the Motion and the accompanying exhibits, as well as Plaintiff's Response in Opposition [ECF No. 36] ("Response") and the Declaration of Paul Sinclair in Support of Plaintiff's Opposition to Defendant's Motion [ECF No. 37-1] ("Sinclair Decl."). For the reasons discussed herein, it is

**ORDERED AND ADJUDGED** that the Motion [ECF No. 22] is **DENIED** *without prejudice* pending a jury trial on the limited issue of whether Plaintiff entered into the alleged agreement requiring arbitration.

## BACKGROUND

Plaintiff Paul Sinclair commenced this collective action in May 2020, asserting violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, against his former employer Wireless Advocates, LLC ("Wireless Advocates"). *See* Collective Action Complaint [ECF No. 1]; Amended Collective Action Complaint [ECF No. 10] ("Amended Complaint"). Defendant filed

the instant Motion on June 4, 2020,[1] and argues that Plaintiff is required to arbitrate his claims in accordance with Wireless Advocates' mutual binding arbitration agreement titled "Arbitration Policy – Non-California Locations – Mutual Agreement to Arbitrate Claims" ("Agreement"). Mot. at 1-2.

According to Wireless Advocates, since 2014 its employees have been subject to the Agreement pursuant to a company-wide dispute resolution procedure which provides that all disputes arising out of the employment context must be resolved by binding arbitration. *See* Declaration of Krishawn Smith ("Smith Decl.") [ECF No. 22-1] ¶ 4. The Agreement is set forth in the company's employee handbook and in a PowerPoint-like presentation that all employees must review and acknowledge, called the Mutual Agreement Arbitration Agreement Module ("Module"). *Id.* ¶ 6. Employees are given the opportunity to opt out of arbitration and both the employee handbook and the Module provide specific instructions on how to opt out. *See* Declaration of Joan Toigo ("Toigo Decl.") [ECF No. 22-2] ¶ 3. Defendant keeps records of all requests to opt out of the Agreement. *Id.*[2]

To ensure employees understand and review the Agreement, Wireless Advocates requires all employees to complete the Module. Smith Decl. ¶ 6. At the beginning of the Module, employees are informed that when they reach the end of the presentation, they will be required to attest that they have "read and received and agree to the terms of the Mutual Agreement to Arbitrate claims" and that falsification of the attestation could result in disciplinary action up to and including termination. *Id.*, Ex. B at p. 15. Each Module slide contains a portion of the Agreement and employees are required to deliberately click on an icon labeled "Next" at the

---

[1] Defendant has not filed a response to the Amended Complaint. Further, as of the date of this Order, 36 opt-in plaintiffs have consented to join the case. *See* [ECF Nos. 29, 48, 56, 69, 72-75, 77-80].

[2] Plaintiff does not claim to have opted out; rather, he denies having ever signed or otherwise electronically acknowledged the Agreement. *See* Sinclair Decl. ¶¶ 3-7.

bottom right of each slide in order to advance to the next slide. *Id.* After reviewing all the Module slides, employees arrive at a screen where they are prompted to indicate their acceptance of the Agreement by entering their unique five-digit Personal Identification Number ("PIN") and then manually clicking on the icon marked "I Agree." Smith Decl. ¶ 7. The Module further states that by entering the PIN and clicking the "I agree" icon, "you are binding yourself to this Agreement just like you had signed it in ink." *Id.* ¶ 6, Ex. B at p. 18. Further, employees are not able to advance to this final step until they have clicked through every slide in the Module. *Id.* ¶ 7.

According to Defendant's records, on April 20, 2015, Plaintiff reviewed the Module and acknowledged acceptance of the Agreement by entering his unique PIN and clicking the "I Agree" icon. *Id.* ¶ 8, Ex. C at p. 37 column X. Plaintiff vehemently denies having performed any of those actions and claims that during his nearly seven years of employment with Wireless Advocates, he was never even presented with the Agreement. Sinclair Decl. ¶¶ 2-3. Specifically, Plaintiff claims that he did not (1) see the Agreement; (2) review, much less complete, the Module; (3) create or use a PIN; (4) enter the last four digits of his social security number; or (5) sign or otherwise electronically acknowledge anything relating to arbitration while employed by Wireless Advocates. *Id.* ¶¶ 3-7.

Plaintiff contends that no agreement to arbitrate exists between the parties because he never reviewed or accepted the Agreement—thus, there has never been a meeting of the minds and a contract to arbitrate has not been formed. *See generally* Resp. Plaintiff has not contested that his claims are arbitrable (assuming a valid agreement exists).

## LEGAL STANDARD

### A. *Procedural Framework*

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforceability of an arbitration agreement. That statute commands that before compelling arbitration of a dispute,

the Court must first be satisfied that the parties agreed to arbitrate the dispute. *See id.* § 4 (directing that courts must direct the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). "Simply put, parties cannot be forced to submit to arbitration if they have not agreed to do so." *Chamlee v. Jonesboro Nursing and Rehab. Ctr., LLC*, No. 18-CV-05899, 2019 WL 6042273, at *1 (N.D. Ga. Aug. 14, 2019) (citation omitted).

Section 4 of the FAA provides that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The Eleventh Circuit has held that "a summary judgment-like standard is appropriate" when the making of an arbitration agreement is in question and "that a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement.'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

"A Plaintiff can raise a genuine issue of fact regarding the validity of an arbitration agreement by (1) making an unequivocal denial that there was an agreement, and (2) producing evidence to substantiate the denial." *Hilton v. Fluent*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018) (citation and internal quotations omitted). This determination is to be made solely by the Court with no thumb on the scale towards finding a valid arbitration agreement, so "while doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (citation omitted).

All evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). A genuine dispute of fact concerning contract formation precludes a court from deciding as a matter of law that the parties did or did not enter into an agreement to arbitrate. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). However, a dispute is not "'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). "Conclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment." *Baloco*, 767 F.3d at 1333 (citing *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000)) (internal quotation marks omitted). Finally, "a district court considering the making of an agreement to arbitrate should give to the party denying the agreement the benefit of all reasonable doubts and inferences that may arise." *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 786 (11th Cir. 2008) (citation and internal quotations omitted).

### B. State Contract Law

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citation omitted); *see also Dasher*, 745 F.3d at 1116 ("[W]hen determining whether an arbitration agreement exists, 'courts generally should apply ordinary state-law principles that govern the formation of contracts.'") (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

This case involves "an employment relationship in Florida and both parties appear to recognize that Florida law controls the question of whether a valid arbitration agreement exists." *Armont v. K12 (Fla. Cyber Charter Acad. - FLCCA)*, No. 19-CV-00334, 2019 WL 7666549, at *7

(M.D. Fla. Dec. 26, 2019), *report and recommendation adopted*, No. 19-CV-00334, 2020 WL 376957, at *1 (M.D. Fla. Jan. 23, 2020). Accordingly, Florida law applies here.

## ANALYSIS

The central issue here is whether Mr. Sinclair and Wireless Advocates entered into a valid and binding arbitration agreement. Plaintiff raises three main arguments in opposition to the Motion. First, he contends the Motion should be summarily denied because defense counsel failed to confer with Plaintiff's counsel before filing the Motion. Second, Plaintiff contends no arbitration agreement exists because he did not "'sign' or 'execute' the Agreement and has provided evidence supporting those denials." Resp. at 15. Third, Plaintiff asserts that this matter should proceed to trial on the issue of contract formation given that Wireless Advocates has failed to meet its burden that an enforceable agreement exists, and, in any event, Plaintiff has raised genuine issues of material fact.

As discussed herein, this Court finds that a genuine factual dispute exists as to whether the parties have formed a valid and binding agreement to arbitrate. Therefore, Defendant's Motion will be denied without prejudice pending a jury trial on the issue of whether Plaintiff agreed to arbitration.

### A. *Wireless Advocates' Failure to Confer Before Filing the Motion Is a Non-Issue*

Plaintiff notes Wireless Advocates failed to comply with Local Rule 7.1(a)(3) of the Local Rules for the Southern District of Florida and on that basis alone, Plaintiff argues the Motion is due to be denied. Mot. at 6-7. The Court disagrees. Under the Local Rules of this District, a movant must first confer with the opposing party to determine whether the requested relief is opposed. The Local Rule reads in pertinent part:

> Prior to filing any motion in a civil case, <u>except a motion</u> for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, <u>to dismiss for failure to state a claim upon which relief can be granted</u>,

> . . . counsel for the movant shall confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion.

S.D. Fla. Local Rule 7.1(a)(3) (emphasis added).

While Plaintiff argues that defense counsel failed to confer in accordance with the Local Rules, Rule 7.1(a)(3) does not require a conference on motions to dismiss. And motions to compel arbitration are generally treated as motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *Wash v. Mac Acquisition of Delaware, LLC*, No. 14-CV-01424, 2014 WL 5173504, at *1 (M.D. Fla. Oct. 14, 2014) (citing *Mullinax v. United Mktg. Grp., LLC*, No. 10-CV-05385, 2011 WL4085933, at *8 (N.D. Ga. Sept. 13, 2011)). Thus, given that the Motion is akin to a dispositive motion to dismiss, defense counsel was under no obligation to confer with opposing counsel prior to filing the Motion.[3]

### B. *Existence of An Agreement to Arbitrate*

#### i. *This Court Has Authority to Decide Whether Plaintiff Agreed to Arbitrate*

As an initial matter, the Court is not persuaded by Defendant's argument that any challenges brought by Plaintiff regarding "gateway" issues such as formation must be decided by an arbitrator and not this Court. Mot. at 9-11. Defendant correctly argues that the arbitration provision at issue contains a delegation provision making gateway issues arbitrable. *Id.* at 10-11.

---

[3] Plaintiff cites two cases from this District in support of his argument regarding a failure to confer—but neither case involved a motion to compel arbitration. *See Thomas v. Miami Dade Pub. Health Trust*, No. 08-CV-22896, 2009 WL 377074 (S.D. Fla. Feb. 12, 2009) (denying a Motion to Compel Interrogatory Responses for failure to confer); *see also Rubin v. Serv. Ins. Co.*, No. 12-CV-23861, 2013 WL 12162456 (S.D. Fla. Jan. 24, 2013) (denying a Motion to Quash Jury for failure to comply with Rule 7.1(a)(3)). Rule 7.1(a)(3) exists so that parties can establish a line of communication to work through disagreements before involving the court. Unlike the instant Motion—which is more appropriately treated as a motion to dismiss—the motions at issue in *Thomas* and *Rubin* are precisely the types of motions Rule 7.1(a)(3) is intended to address.

However, the Court disagrees that the delegation provision requires that the arbitrator, not the Court, determine whether an agreement was made in the first instance.

It is "well settled that where the [arbitration] dispute at issue concerns contract formation, the dispute is generally for the courts to decide." *Granite Rock Co.*, 561 U.S. at 296. However, it is also true that "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc*., 866 F.3d 1257, 1264 (11th Cir. 2017) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). An antecedent agreement of this type is generally referred to as a "delegation provision." *See Rent-A-Ctr.*, 561 U.S. at 68.

When an agreement provides for delegation, courts look to the provision's language to ascertain whether it reflects the requisite "clear and unmistakable intent to arbitrate gateway issues." *Jones*, 866 F.3d at 1267. The requisite intent is present when the provision requires arbitration of "any dispute" concerning gateway issues. *Id.* In this case, the relevant provision delegates exclusive authority to the "Arbitrator . . . to resolve any dispute relating to the interpretations, applicability, enforceability, or formation of this Agreement." Smith Decl., Ex. A at p. 7. Accordingly, *if* Plaintiff agreed to the arbitration clause, the delegation provision clearly and unmistakably evinces an intent to arbitrate gateway issues.

But, "arbitration is a matter of consent, not coercion." *See Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1416 (2019) (citation omitted). "When one party contends that an agreement to arbitrate was never formed, looking to the text of that very agreement is problematic because the agreement is only a valid indicator of the parties' intent if they agreed to be bound by its terms." *Allstate Ins. Co. v. Toll Bros., Inc*., 171 F. Supp. 3d 417, 427 (E.D. Pa. Mar. 21, 2016). Here,

Plaintiff disputes the existence of the Agreement, and the Court must therefore make this threshold determination regardless of whether a delegation clause exists.[4]

The clear text of 9 U.S.C. § 4 indicates that the Court should only direct the parties to proceed with arbitration once it is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." Parties are free to agree to a clear and unmistakable delegation provision in their contract, like the one found here. But before the FAA will require enforcement of such a delegation provision, the Court must be satisfied that the parties have agreed to it. After all, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator"—including an arbitrability dispute—"the court determines whether a valid arbitration agreement exists."). This Court will not compel the parties to settle their dispute

---

[4] Further, Plaintiff argues that by insisting all gateway issues must go to an arbitrator, Defendant "conflates the issues of arbitrability and enforcement with contract formation, which is the issue here." Resp. at 8. The Court agrees and finds the *Allstate* court's reading of *Granite Rock* instructive on this point:

> The Court in *Granite Rock* appeared to recognize that while the text of an arbitration agreement may be able to supply evidence that the parties intended to commit certain threshold arbitrability questions to arbitration, the same is not true when the threshold question is one of formation. There, the Court observed that before a court may conclude that two parties intended to arbitrate a dispute, the court must find that "their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to the arbitrator) is legally enforceable and best construed to encompass the dispute." *See Granite Rock*, 561 U.S. at 303. The placement of the parenthetical in that passage appears to "draw a distinction between the issue of contract formation and the issues of contract enforceability and interpretation," suggesting that the text of the agreement to arbitrate cannot serve as the basis for finding that parties clearly intended to arbitrate a dispute over whether that very agreement had ever been formed. *See* Karen Halverson Cross, *Letting the Arbitrator Decide Unconscionability Challenges*, 26 OHIO ST. J. ON DISP. RESOL. 1, 59-60 (2011) (reading *Granite Rock* to suggest that "a delegation clause that purports to vest in the arbitrator exclusive authority to determine a contract's formation would be invalid").

*Allstate Ins. Co.*, 171 F. Supp. 3d at 427.

in arbitration in the absence of an arbitration agreement. Thus, it is abundantly clear that the Court, not an arbitrator, should decide whether the parties entered into the Agreement in the first place.

### ii. *Plaintiff Could Not Have Accepted the Agreement by Virtue of His Continued Employment with Wireless Advocates*

Defendant also argues that "[b]y continuing his employment with Wireless Advocates, Plaintiff is deemed to have agreed to the Arbitration Agreement as a matter of law." Mot. at 17-18. Defendant is incorrect. The Agreement at issue here did not provide for acceptance through continued employment, and the three cases Defendant offers in support of its argument are either distinguishable or inapplicable.

First, Defendant cites *Santos v. General Dynamics Aviation Services Corp.*, 984 So. 2d 658 (Fla. 4th DCA 2008), where an employer provided notice of a new arbitration policy to all of its employees. *Id*. at 659. The notice at issue in *Santos* stated that "the continuation of employment by an individual shall be deemed to be acceptance of the [arbitration agreement]. No signature shall be required for the [arbitration agreement] to be applicable." *Id*. Because the arbitration policy expressly stated that continuation of employment would constitute acceptance of the policy, the *Santos* court found that the employee seeking to avoid arbitration had accepted the agreement by continuing his employment. *Id.* at 661.

The determinative fact in *Santos*—the acceptance of the agreement through continued employment—is not present in the instant case. Here, Defendant's Agreement expressly states:

> **7. Your Agreement.** You acknowledge and agree that you are accepting and agreeing to the terms of this Agreement **by providing a unique five-number Personal Identification Number and clicking on the appropriate box within the Arbitration Agreement module**, and that by doing so you are binding yourself to this Agreement just like you had signed it in ink.

Smith Decl., Ex. A at p. 9 (emphasis added). In this way, the Agreement expressly indicates that acceptance occurs when the employee provides the five-digit PIN and clicks the "I agree" link at

the conclusion of the Module. *Id.* Because Defendant's Agreement does not state that continued employment constitutes acceptance, this case is distinguishable from *Santos*.

Next, Defendant cites *Cintas Corporation No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005), for the proposition that an "employment contract containing [an] arbitration clause [is] valid and enforceable and supported by consideration in the form of continued employment." Mot. at 17. Defendant similarly relies on *Tranchant v. Ritz Carlton Hotel Co.*, No. 10-CV-00233, 2011 WL 1230734, at *6 (M.D. Fla. Mar. 31, 2011) for the proposition that an "arbitration provision [is] supported by valid consideration in the form of continued employment in an at-will state." Mot. at 18. However, these points are entirely inapposite to the issue before the Court. The question here is whether there was acceptance of the Agreement to begin with—not whether there was adequate consideration.

Accordingly, given that the Agreement explicitly provides the manner of acceptance and does not provide for acceptance through continued employment, the Court rejects Defendant's argument that Plaintiff should be "deemed" to have accepted the Agreement by continuing his employment relationship.

> ### iii. *Plaintiff Raises a Genuine Issue of Material Fact as to the Formation of the Agreement*

Generally, when a motion to compel arbitration is filed, courts consider the following: "(1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." *Gomez v. Allied Professionals Ins. Co.*, No. 19-CV-24994, 2020 WL 2197865, at *3 (S.D. Fla. May 6, 2020) (citations omitted). Here, Plaintiff disputes the existence of an agreement to arbitrate. He claims he never signed the Agreement and never even saw it prior to filing this case. Plaintiff does not otherwise contest the validity of the Agreement or the arbitrability of the claims in this case, and he does not contend that the right to arbitration has been waived (assuming an agreement to arbitrate exists).

If this Court finds the making of an arbitration agreement to "be in issue, [it] shall proceed summarily to the trial thereof." 9 U.S.C. § 4.  As discussed *supra*, determining whether the making of the arbitration agreement is in issue requires the application of a summary judgment-like standard.  *Bazemore*, 827 F.3d at 1333.  Thus, "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Id*. (citing Fed. R. Civ. P. 56(a)).  The Eleventh Circuit "repeatedly has emphasized that 'state law generally governs whether an enforceable contract or agreement to arbitrate exists.'" *Id.* at 1329 (citation omitted).  And under Florida law, "[t]he party seeking enforcement of an agreement has the burden of establishing that an enforceable agreement exists."  *CEFCO v. Odom*, 278 So. 3d 347, 352 (Fla. 1st DCA 2019); *see also Bazemore*, 827 F.3d at 1330 ("The party asserting the existence of a contract has the burden of proving its existence and its terms." (citation omitted)).

Here, Defendant attempts to satisfy its burden by providing two declarations in support of its Motion, as well as a print-out version of the Module allegedly reviewed and acknowledged by Plaintiff; a copy of the Agreement that Plaintiff allegedly electronically agreed to; and an internal chart that purports to serve as evidence that Plaintiff reviewed the Module and acknowledged the Agreement.  *See* [ECF Nos. 22-1, 22-2].  However, as Plaintiff notes, Defendant has failed to provide any evidence conclusively demonstrating Plaintiff electronically signed the Agreement in question.  Instead, Defendant has merely pulled a generic copy of the Agreement from its Human Resources Policy & Procedure Manual and attached it to its Motion—claiming therein that it was an agreement Plaintiff signed.  *See generally* Smith Decl., Ex. A.  Similarly, Defendant attaches a blank printable version of the Module it claims Plaintiff completed but has provided no evidence that Plaintiff checked any of the boxes or otherwise clicked through the slides and reviewed the Module. *Id.*, Ex. B.  Lastly, Defendant provides an excerpt of an internally created spreadsheet

which purports to reflect that Plaintiff reviewed the Module and accepted the Agreement on April 20, 2015—but no computer-generated receipt or confirmation exists to certify that Plaintiff in fact reviewed the Module and signed the Agreement on that date.[5]  *Id.* ¶ 8, Ex. C.

On the other hand, Plaintiff unequivocally denies signing (or even having seen) the Agreement.  *See* Sinclair Decl. ¶¶ 3-7.  The Court also notes that Defendant's records show Wireless Advocates first began using the subject Agreement in 2014, Smith Decl. ¶ 4, which is several years after Plaintiff was hired on October 18, 2010, Toigo Decl. ¶ 2.  Thus, giving Plaintiff the benefit of all reasonable doubts and inferences, *Magnolia Capital Advisors*, 272 F. App'x at 786, issues of material fact surrounding contract formation preclude the Court from deciding—as a matter of law—that the parties did or did not enter into the agreement to arbitrate.  Indeed, Plaintiff's declaration is enough on its own to create a genuine issue of material fact.

But even if that were not the case, it is Defendant who bears the burden of proving the existence of an agreement to arbitrate.  *See Bazemore*, 827 F.3d at 1330.  Here, issues abound: the lack of an Agreement containing Plaintiff's electronic signature; the absence of any system-generated receipt confirming Plaintiff's completion or acknowledgement of the Module; the unexplained date discrepancy (*see supra* n.5) present in Defendant's only internal record purportedly reflecting Plaintiff's acceptance of the Agreement; and circumstances surrounding the timing of when Defendant introduced the Agreement in relation to Plaintiff's hire date.  Faced with these concerns, the Court is unable to decide, as a matter of law, whether the "parties did or did not enter into an arbitration agreement," *see Bazemore*, 827 F.3d at 1333.

---

[5]  Additionally, the Court notes that column X of the spreadsheet is titled "Wireless Advocates Policies and Procedures Arbitration Outside of California – **2016**," Smith Decl., Ex. C at 37 (emphasis added), which naturally contradicts any contention that Plaintiff could have possibly reviewed a *2016* Agreement as of *April 20, 2015*.  Defendant's Motion does not explain this discrepancy.

Ultimately, until the question of contract formation is resolved, the Court has no authority to compel the arbitration of this dispute. Therefore, this matter must summarily proceed to trial in accordance with 9 U.S.C. § 4. Because Plaintiff has requested—in his Response—a jury trial on the issue of the making of the Agreement, he is entitled to a jury trial on this issue.[6] *See Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346-50 (11th Cir. 2017).

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration [ECF No. 22] is **DENIED** *without prejudice* pending a jury trial on the limited issue of whether Plaintiff entered into the alleged Agreement.

2. Additionally, the Court will hold a case management conference on **Tuesday, December 1, 2020 at 10:00 A**.**M**. Counsel for Plaintiff should be prepared to address whether Plaintiff will waive his right to a jury trial and opt to proceed with a bench trial in this matter. The parties are instructed to call 1-877-402-9753 by no later than 9:55 A.M. The access code is 9372453 and the password is 0918. The Court requires that the parties appear via a landline (i.e. not a cellular phone or a speaker phone) if possible, for clarity.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 12th day of November, 2020.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:     Counsel of record

---

[6] Plaintiff is certainly entitled to a jury trial; however, he may wish to consider proceeding by bench trial given that no jury trials will occur until April 2021 in the Southern District of Florida as a result of the ongoing COVID-19 pandemic. *See* Administrative Order 2020-76 (Seventh Order Concerning Jury Trials and Other Proceedings).